IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Dwayne Ishaaq, ) | C.A. No.: 8:13-cv-02343-HMH-JDA |
| ) | |
| Plaintiff and Counter Defendant, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| Cornerstone National Bank, ) | |
| ) | |
| Defendant and Counter Claimant. ) | |
| ) | |

This matter is before the Court on a motion for summary judgment filed by Defendant [Doc. 46] and a motion for summary judgment on Defendant's counterclaim filed by Plaintiff [Doc. 50]. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(e), D.S.C., this magistrate judge is authorized to review all pre-trial matters in cases involving litigation by individuals proceeding pro se and to submit findings and recommendations to the District Court.

Plaintiff, an African-American proceeding pro se, filed this case on August 28, 2013, generally alleging Defendant refused to loan Plaintiff money because of Plaintiff's race. [Doc. 1.] Defendant filed an Answer and Counterclaim for destruction of property on October 16, 2013. [Doc. 20.] On June 16, 2014, Defendant filed a motion for summary judgment. [Doc. 46.] On June 17, 2014, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised to respond to the motion and of the possible consequences if he failed to adequately respond. [Doc. 47.] Plaintiff filed a response in opposition on July 7, 2014 [Doc. 49], and Defendant filed a reply on July 16, 2014 [Doc. 52].

Plaintiff filed a motion for summary judgment on Defendant's counterclaim on July 7, 2014. [Doc. 50.] Defendant filed a response in opposition on July 24, 2014 [Doc. 62], and Plaintiff filed a reply on August 11, 2014 [Doc. 68]. Accordingly, the motions are ripe for review.

## BACKGROUND

On April 3, 2006, Concrete Jungle, LLC ("Concrete Jungle"), a South Carolina limited liability company, entered into a Bond for Title with Wealth Builders, Inc. ("Wealth Builders"), a South Carolina corporation. [Doc. 46-3.] Plaintiff signed the Bond for Title as the Managing Member and President of Concrete Jungle. [*Id.* at 6.] Pursuant to the Bond for Title, Concrete Jungle purchased property located at 1810 Laurens Road, Greenville, South Carolina ("the 1810 Property"), from Wealth Builders. [Doc. 46-3.] Wealth Builders financed Concrete Jungle's purchase of the 1810 Property. [Doc. 46-22 at 4:19–5:3.] At the time Concrete Jungle entered into the Bond for Title, Plaintiff knew Defendant had a mortgage on the 1810 Property.[1] [*Id.* at 6:19–7:2.] At the time of purchase, Plaintiff operated his clothing business out of the 1810 Property.[2] [*Id.* at 3:8–12.]

On May 3, 2011, Concrete Jungle assigned all of its rights under the Bond for Title to Citi State, LLC ("Citi State"), a limited liability company of which Plaintiff is the sole member. [Docs. 46-4; 46-22 at 9:19–10:1.] Plaintiff signed the assignment as managing member of both Concrete Jungle and Citi State. [Docs. 46-4; 46-22 at 10:2–7.]

---

[1]On April 5, 2005, Defendant made a loan to Wealth Builders, which was secured by a mortgage on real estate located at 1804, 1806, and 1810 Laurens Road, Greenville, South Carolina (collectively, "the Properties"). [Doc. 46-2.]

[2]The 1810 Property was zoned for commercial use. [Doc. 46-22 at 3:21–23.]

2

On August 31, 2012, Defendant filed a foreclosure action after Wealth Builders failed to make payments on its loan on the Properties.[3] [Doc. 46-5 Findings of Fact ¶¶ 1, 10.] Both Concrete Jungle and Citi State were named as defendants in the foreclosure action, but neither filed a response to the foreclosure complaint. [*Id.* ¶ 3.] Plaintiff appeared at the foreclosure hearing on January 17, 2013 and was given an opportunity to argue before the Master in Equity. [Doc. 46-22 at 17:21–18:14.] After the hearing, the Master in Equity entered an order, directing that the Properties be sold at a foreclosure sale, free and clear of any interest of Concrete Jungle and Citi State. [Doc. 46-5 Conclusions of Law ¶¶ 8, 12.] Plaintiff subsequently attended the foreclosure sale on March 4, 2013 and knew Defendant purchased the Properties.[4] [Doc. 46-22 at 18:15–22.]

On March 7, 2013, Susan Jolly ("Jolly"), Defendant's Senior Vice President, wrote to Plaintiff, advising him that Defendant was now the owner of the 1810 Property and that Plaintiff could rent the 1810 Property on a month-to-month basis for $2,500 a month. [Doc. 46-10.] Jolly's letter also stated that if Defendant was not in receipt of the March 2013 rent

---

[3] Plaintiff asserts that he purchased the properties adjacent to the 1810 Property prior to the foreclosure action. [Doc. 49 at 2.] However, neither party has provided any evidence that Plaintiff had any rights to these properties.

[4] While the foreclosure action was pending, around the fall of 2012, Plaintiff spoke with Brian Murdoch ("Murdoch"), Vice President/City Executive at Defendant's Farrs Bridge Road branch. [Doc. 46-22 at 14:6–21; Doc. 46-9 (Murdoch's business card, establishing job title).] Plaintiff informed Murdoch that if Defendant got the Properties back, Plaintiff may be interested in borrowing money from Defendant to buy the Properties. [Doc. 46-22 at 15:16–16:2.] Murdoch informed Plaintiff that if he wanted to apply for a loan, Defendant would need certain documents, including the previous two years' individual and corporate federal tax returns, a personal financial statement, and copies of checks, to determine if Plaintiff was eligible for a loan. [*Id.* at 16:11–22; Doc. 46-9 (back of business card, where Murdoch summarized documents needed).] Plaintiff asserts that Murdoch informed Plaintiff that the previous payments Plaintiff made to Wealth Builders could serve as a down payment on the Properties. [Doc. 49 at 2.]

payment by March 14, 2013, Plaintiff would have thirty days to vacate the premises. [*Id.*] Plaintiff did not make any payment to Defendant after receiving the letter. [Doc. 46-22 at 23:1–4.]

On or about March 9, 2013, Plaintiff visited Jolly in person to discuss purchasing the Properties. [*Id.* at 27:4–23.] During that meeting, Jolly told Plaintiff that Defendant would sell the Properties to Plaintiff or Citi State for $350,000. [*Id.* at 28:2–8.] Jolly further informed Plaintiff that Defendant would consider making a loan to Citi State to purchase the Properties and that, before it could make that loan, Defendant would have to approve Plaintiff's and Citi State's credit; therefore, Plaintiff would have to fill out a credit application, submit three years of personal and business tax returns, provide personal and business financial statements and bank statements, and pay a 25% down payment. [*Id.* at 28:9–29:16.] Plaintiff asserts that he spoke to Roger Anthony ("Anthony"), Defendant's President, after speaking with Jolly. [Doc. 49 at 3.] According to Plaintiff, Anthony told Plaintiff that he was tired of dealing with Plaintiff's kind and, when Plaintiff asked Anthony if he meant because Plaintiff was black, Anthony got really angry and said he would not help Plaintiff anymore. [*Id.*]

On March 13, 2013, Jolly sent the following electronic mail message to Plaintiff:

> [Plaintiff], per our conversation on 3/13/2013, [Defendant] agrees to s[ell] you the properties located 1804, 1806 and 1810 Laurens Road for $350,000. We will not list the properties with a realtor or entertain their offers for ten (10) days from today's date (3/13/2013) to allow you time to provide [Defendant] with adequate information for [Defendant] to make a determination concerning financing on the above-referenced property. This financial information would include but is not limited to three (3) years of personal and business tax returns, personal and business financial statements, bank statements or other statements of liquidity showing the ability to pay a

4

>   minimum of $70,000. down payment. During this ten (10) day term, you may also provide [Defendant] with an acceptable commitment letter from another lender to finance this project.

[Docs. 46-11; 46-12 ¶ 1.] Plaintiff did not apply for a loan with Defendant; instead, Plaintiff sent an electronic mail message to Jolly on March 25, 2013, stating,

>   Susan Jolly thanks for the time to find a lender to finance the properties 1804 1806 1810 Laurens road Greenville SC 29607 I have contacted a lender who is willing to finance the loan. I will be in contact with you as soon as I hear from them which should be soon thanks again.

[Docs. 46-12 ¶ 2; 46-15.] Jolly replied,

>   Our commitment to you was for you to provide [Defendant] with an acceptable commitment letter from another lender during the ten (10) day period. The ten (10) day period has expired so we will proceed with marketing the property. Of course, you may still present us with an offer and lender commitment letter at any time but this expiration of ten days simply means that you no longer have exclusive right to purchase the property as we are now actively marketing the property.

[Docs. 46-12 ¶ 3; 46-13.] Plaintiff never submitted a proposed purchase contract [Docs. 46-12 ¶ 6; 46-22 at 45:8–13] and never submitted any financial documentation to Defendant to apply for a loan [Docs. 46-12 ¶ 7–10; 46-22 at 34:25–35:6].

Plaintiff asserts that Defendant's requirement that Plaintiff have a $75,000 down payment[5] was because of Plaintiff's race and that Defendant did not hold non-African-

---

[5] As previously stated, Jolly initially informed Plaintiff that the bank would require a 25% down payment [Doc. 46-22 at 29:12–16], which is $87,500 on a $350,000 loan. She decreased the down payment requirement to $70,000 in her March 13, 2013 electronic mail message. [Doc. 46-11.] Plaintiff testified that Jolly subsequently reinstated the 25% down payment requirement [Doc. 46-22 at 32:18–32:1]; however, in his pleadings, he asserts Defendant required him to have a $75,000 down payment [Docs. 1 at 4; 49 at 3].

Americans to the same standards. [Docs. 1 at 4; 49 at 3.] Plaintiff further contends that he was not given an opportunity to apply for a loan because of his race. [Doc. 1 at 4.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe her pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for her. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

6

Fed. R. Civ. P. 56(c). Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

      The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual

disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

**Equal Credit Opportunity Act Claim**

Although not specified in his Complaint, Plaintiff appears to allege a claim of race discrimination under the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("the ECOA"). The ECOA establishes that it is "unlawful for any creditor to discriminate against any applicant . . . on the basis of race." 15 U.S.C. § 1691(a)(1). The Fourth Circuit Court of Appeals has applied the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973),[6] to claims of discrimination under the ECOA. *See Wise v. Vilsack*, 496 F. App'x 283 (4th Cir. 2012) (unpublished decision) (collecting cases from other jurisdictions that have applied the *McDonnell Douglas* framework to claims of discrimination under the ECOA); *Crestar Bank v. Driggs*, 995 F.2d 1062 (4th Cir. 1993)

---

[6]The plaintiff in *McDonnell Douglas* alleged employment discrimination in violation of Title VII of the Civil Rights Act of 1964.

(unpublished table decision). Under this framework, a plaintiff must first prove a prima facie case of discrimination.[7] *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its action. *Id.* By providing such an explanation, the defendant rebuts the presumption of discrimination created by the prima facie case, and "[t]he presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11 (1993) (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981)). If the defendant articulates a legitimate, nondiscriminatory reason, the burden shifts back to the plaintiff to show that the articulated reason was actually a pretext for discrimination.[8] *McDonnell Douglas*, 411 U.S. at 804.

---

[7] To establish a prima facie case of discrimination under the ECOA, Plaintiff must demonstrate (1) he is a member of a protected class; (2) he applied for and was qualified for a loan; (3) Defendant rejected the application despite Plaintiff's qualifications; and (4) Defendant continued to extend loans to others of similar credit stature outside of Plaintiff's protected class. *See Wise*, 496 F. App'x at 285 (citing *Rowe v. Union Planters Bank of Se. Mo.*, 289 F.3d 533, 535 (8th Cir. 2002)).

[8] Alternatively, "[i]t is always open to a plaintiff in a discrimination case to try to show in a conventional way, without relying on any special doctrines of burden-shifting, that there is enough evidence, direct or circumstantial, of discrimination to create a triable issue." *Latimore v. Citibank Fed. Sav. Bank*, 151 F.3d 712, 715 (7th Cir. 1998) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121 (1985); *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1399 (7th Cir. 1997); *Hill v. Metropolitan Atlanta Rapid Transit Authority*, 841 F.2d 1533, 1539 (11th Cir. 1988)). However, here, Plaintiff has not presented direct evidence of race discrimination. "Evidence is direct if it 'both reflect[s] directly the alleged discriminatory attitude and . . . bear[s] directly on the contested [] decision.'" *Young v. United Parcel Serv., Inc.*, 707 F.3d 437, 446 (4th Cir. 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)) (some alterations in *Young*). "Thus, evidence is direct if it establishes discriminatory motive with no need for an inference or a presumption." *Id.* Although Plaintiff asserts that when Anthony told Plaintiff he was tired of dealing with Plaintiff's kind, Anthony used "your kind" to refer to African-Americans, this statement by Anthony does not constitute direct evidence of discrimination because it is

Here, Plaintiff cannot establish a prima facie case of discrimination because he cannot demonstrate that he applied for and was qualified for a loan; that Defendant rejected the application despite Plaintiff's qualifications; or that Defendant continued to extend loans to others of similar credit stature outside of Plaintiff's protected class.[9] First, Plaintiff is unable to establish that he applied for a loan or that he was qualified for a loan. Although Plaintiff was informed on at least three occasions about how to apply for a loan with Defendant and what documentation would be required [Docs. 46-9; 46-11; 46-12 ¶ 1; 46-22 at 16:11–22, 28:9–29:16], Plaintiff has admitted that he never submitted any financial documentation to Defendant to apply for a loan[10] [Docs. 46-12 ¶ 7–10; 46-22 at 34:25–35:6]. Moreover, Plaintiff is unable to establish that he was qualified for a loan. As an initial matter, Plaintiff has presented no evidence, other than his own conclusory allegations, to show that he was qualified for a loan. *See Ross*, 759 F.2d at 365 (holding that conclusory allegations or denials, without more, are insufficient to preclude the granting of a summary judgment motion). On the other hand, Defendant has submitted evidence that Plaintiff applied for a loan with another lender, Capital Bank, in March 2013, but Plaintiff's application was declined because Capital Bank found Plaintiff's income

---

unclear what Anthony meant by "your kind." Even assuming, as Plaintiff suggests, that Anthony meant African-Americans, such an interpretation requires an inference or a presumption. As such, Anthony's statement does not constitute direct evidence of discrimination. Therefore, the Court proceeds under the *McDonnell Douglas* framework.

[9]Defendant concedes that Plaintiff is a member of a protected class. [Doc. 46-1 at 11.]

[10]To the extent Plaintiff argues Defendant somehow prevented him from applying for a loan, the record does not support this assertion. As stated, on at least three occasions Defendant informed Plaintiff about the loan application process and that it would consider making a loan to Plaintiff.

insufficient to service debt and found Plaintiff had excessive obligations to income. [Docs. 46-20; 46-23 at 8:3–13, 9:23–10:20, 11:17–12:9, 13:17–16:4, 17:19–19:12.] Accordingly, Plaintiff is unable to establish that he applied for orwas qualified for a loan. Further, because he cannot establish that he applied for or was qualified for a loan, Plaintiff cannot establish that Defendant rejected Plaintiff's application despite his qualifications.

Finally, Plaintiff cannot demonstrate that Defendant continued to extend loans to others of similar credit stature outside of Plaintiff's protected class. Again, Plaintiff has presented no evidence, other than his own conclusory allegations, to show that Defendant continued to extend loans to others of similar credit stature outside of Plaintiff's protected class. *See Ross*, 759 F.2d at 365. To the extent Plaintiff argues that Defendant would have extended credit to others of similar credit stature with better terms,[11] Plaintiff likewise has presented no evidence to support this claim. On the other hand, Defendant has presented evidence that the down payment requirement offered to Plaintiff is in line with Defendant's loan policies. Jolly avers that during the period of time relevant to this case, Defendant's loan policy relating to down payment requirements for commercial real estate loans was to require a 25% down payment. [Doc. 46-25 ¶ 17.] Plaintiff has failed to establish that Defendant continued to extend loans to others of similar credit stature outside of Plaintiff's protected class. Because Plaintiff has failed to establish a prima facie

---

[11]Plaintiff argues Defendant did not hold non-African-Americans to the same down payment requirement they offered to Plaintiff. [Docs. 1 at 4; 49 at 3.]

case of race discrimination in violation of the ECOA, Defendant's motion for summary judgment should be granted.[12]

**Defendant's Counterclaim**

Defendant's counterclaim alleges a state law claim for destruction of property. Such state law claim could be heard by this Court only through the exercise of supplemental jurisdiction, which allows federal courts to hear and decide state law claims along with federal law claims.[13] Federal courts are permitted to decline supplemental jurisdiction

---

[12] Defendant also addresses a potential claim under 42 U.S.C. § 1982 in its memorandum in support of its motion for summary judgment. Section 1982 prohibits race discrimination in the purchase and sale of land or goods. 42 U.S.C. § 1982; *Hunter v. Am. Gen. Life & Accident Ins. Co.*, 375 F. Supp. 2d 442, 445 (D.S.C. 2005) (observing that § 1982 generally is aimed at remedying discrimination relating to property). However, the Court is not convinced Plaintiff asserts a cause of action under § 1982 because the Complaint focuses on Plaintiff's inability to obtain a loan from Defendant and does not seem to allege that Defendant refused to sell the Properties to Plaintiff. [Doc. 1.] However, even if Plaintiff alleges a § 1982 claim, he cannot establish a prima facie case because he is unable to show that he applied for and was qualified to purchase the Properties, that he was rejected, or that the Properties remained available thereafter. *See Bell v. Mike Ford Realty Co.*, 857 F. Supp. 1550, 1557 (S.D. Al. 1994) (setting forth the elements of a prima facie case of discrimination under § 1982: (1) that the plaintiff is a member of a racial minority; (2) that he applied for and was qualified to rent or purchase certain property or housing; (3) that he was rejected; and (4) that the housing or rental opportunity remained available thereafter). Plaintiff testified that he never submitted a proposed purchase contract. [Docs. 46-12 ¶ 6; 46-22 at 45:8–13.] Further, Plaintiff applied for a loan with Capital Bank, but his application was declined [Doc. 46-20], and Plaintiff has not presented any evidence that he was either approved for a loan by another lender or that he had $350,000 available to purchase the Properties. Finally, the record establishes that Plaintiff was told multiple times that Defendant would sell the Properties to Plaintiff [*e.g.*, Doc. 46-22 at 28:2–8], including a ten-day period in which Plaintiff had the exclusive right to purchase the Properties [Docs. 46-11; 46-12 ¶ 1]. As such, even if Plaintiff attempts to raise a § 1982 claim, Defendant would be entitled to summary judgment on that claim.

[13] A civil action for Defendant's state law counterclaim could be cognizable in this Court under the diversity statute, if that statute's requirements are satisfied. However, this Court does not have diversity jurisdiction in this case because Plaintiff and Defendant are both citizens of the State of South Carolina, which defeats the required complete diversity

pursuant to 28 U.S.C. § 1367(c)(3), however, if "the district court has dismissed all claims over which it has original jurisdiction." Here, because the Court recommends that summary judgment be granted as to the federal claim in this case, the Court further recommends that the district judge decline to exercise supplemental jurisdiction over Defendant's state law counterclaim.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendant's motion for summary judgment be GRANTED. The Court further recommends that the district court decline to exercise supplemental jurisdiction over Defendant's counterclaim and that Defendant's counterclaim be dismissed. As such, the Court recommends that Plaintiff's motion for summary judgment on Defendant's counterclaim be FOUND AS MOOT.

**IT IS SO RECOMMENDED.**

s/Jacquelyn D. Austin  
United States Magistrate Judge

January 30, 2015  
Greenville, South Carolina

---

of parties.